**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-80995-ROSENBERG**

JERRY JENNINGS,

     Plaintiff,

v.

J.W. CHEATHAM LLC,

     Defendant.

_____/

## ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Defendant's Motion for Summary Judgment at docket entry 36. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

### Introduction

This is a case about a fight. The Plaintiff, a construction worker, was involved in an altercation with his supervisor at a jobsite. After the altercation, the Plaintiff went home. After the Plaintiff went home, the Defendant investigated what happened by listening to testimony from three of the Plaintiff's fellow employees. Based upon that testimony—which was that the Plaintiff was the at-fault aggressor—the Defendant immediately terminated the Plaintiff.

The Plaintiff brought this suit under 48 U.S.C. § 1981, alleging that the real reason he was terminated was because he is Black. Contending that the Plaintiff lacks sufficient evidence of racial discrimination, the Defendant filed the Motion for Summary Judgment before the Court.

### Evidence of Discrimination in the Record

In Response, the Plaintiff contends that he has both direct and circumstantial evidence of racial discrimination. But in support of the proposition that he has direct evidence of

discrimination, the Plaintiff cites to his own testimony that fellow employees made various racial comments to him while working at his jobsite. DE 42 at 3-4.  However, the Plaintiff has not sued the persons he says made those derogatory comments—he has not sued any individual.  Instead, he has sued his employer, a limited liability company.  The Plaintiff makes no argument, and the Court can discern no basis, to attribute the statements from fellow employees at the jobsite to the Defendant, [1] such that the comments are *direct* evidence that the *Defendant* engaged in discriminatory conduct when it terminated the Plaintiff.  Nor has the Plaintiff brought a hostile work environment claim, where the comments made to him at his jobsite *would be* direct evidence of a hostile work environment.  Instead, what the Plaintiff relies upon is circumstantial evidence to support his claims for disparate treatment and for retaliation.

<u>Analysis</u>

Both of the Plaintiff's claims are subject to a similar analysis.  For example, to prove a disparate treatment claim, the Plaintiff must show that he was a member of a protected class (here, the Plaintiff's race), that he suffered an adverse employment action (here, termination), and that he was treated less favorably by his employer than one or more similarly-situated individuals outside his protected class. *Maynard v. Bd. Of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

The Plaintiff has not provided any evidence for the proposition that another, similarly-situated non-Black employee (such as someone involved in an altercation) was ever treated more favorably by the Defendant; the Plaintiff concedes that he has no comparator. DE 42 at 6.  When a plaintiff lacks a comparator, "summary judgment is appropriate where no other evidence of

---

1 By way of example, the Plaintiff makes no argument that the Defendant authorized, adopted, or ratified the racial comments made by other employees.  The Plaintiff admits that the Defendant's policies do not permit racial harassment or discrimination. DE 35 at 1-2; DE 41 at 1-2.

discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir. 1997).  Even if the Plaintiff had a comparator (or other evidence of discrimination by the Defendant), however, a defendant may offer a non-discriminatory basis for its actions. *Johnson v. Miami-Date Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020).

As for the non-discriminatory basis in this case, the individual who decided to terminate the Plaintiff on behalf of the Defendant was Mr. Damron, an owner.  It is undisputed that Mr. Damron was not present for the altercation, and it is undisputed that he interviewed three employees about the incident.  It is also undisputed that one of the interviewed employees was Black, and it is undisputed that the employees testified that it was the Plaintiff who was at fault for the altercation.  It is for those reasons the Defendant contends the Plaintiff was terminated. DE 35 at 6-7.  For the Plaintiff to survive summary judgment, he must therefore provide evidence for the proposition that that Mr. Damron's decision to terminate him should not be believed, and that Mr. Damron instead terminated the Plaintiff for discriminatory reasons.

To argue Mr. Damron's basis for termination should not be believed, the Plaintiff contends that he previously complained to Mr. Damron about racial comments by other employees, but that is not evidence that Mr. Damron wanted to discriminate against the Plaintiff.  Instead, the undisputed record evidence is that Mr. Damron told the Plaintiff that he wanted the Plaintiff to inform him, should the Plaintiff ever encounter derogatory racial comments at work. DE 35 at 3; DE 41 at 3.  The Plaintiff further relies upon the fact that Mr. Damron assigned him to a specific jobsite so that the Plaintiff would work with another Black employee, but the Court fails to see how that is evidence of pretext.  Instead, the record evidence is that Mr. Damron moved the Plaintiff to another jobsite in response to the Plaintiff's complaints about a prior jobsite/work crew.

DE 35 at 4-5; DE 41 at 3-4.  The Plaintiff also relies upon evidence that racially charged comments were made to him by other employees at his jobsite but, as explained in greater detail below, the Court fails to see how that is evidence that Mr. Damron's basis for termination was pretextual.

The Altercation at the Heart of this Case

As this Court noted in its introduction, this is a case about a fight.  Ultimately, the central, critical evidence in this case is about that altercation.  On that point, the Plaintiff focuses on the fact that Mr. Damron's decision to fire the Plaintiff was made without speaking to the Plaintiff. Based upon that fact, the Plaintiff argues he has a triable issue as to whether Mr. Damron's basis for termination was pretextual.  This is an argument that must be considered in context with the undisputed evidence in this case.  After the altercation, the Plaintiff's fellow employees spoke to Mr. Damron as follows:

> Answer: So I waited for Wayne, he came in and put his keys on the counter and was clearly shaken up and said, "I can't do this anymore." This is . . . . You know, he was, he was very, very distraught to the point he almost had tears in his eyes and he was afraid.
>
> And I said, You know, calm down and tell me what happened.
>
> And he's like, You know, that guy's crazy. I don't need this. I can't be around this, you know, it's not worth it.
>
> And I, I got him to calm down and I had him come next door and sit down in the conference room. And I said, Well, you need to tell me, like, what happened, not that you're upset, I can clearly see that you're upset.
>
> And he said, basically, that they were on the job, he had asked [Plaintiff] to -- I think it was break out concrete a certain way so as not to cause them additional work for them to have to come back and do it again and he immediately took offense at, at Wayne.
>
> And he said, You know -- this is Wayne telling me -- he said that he started yelling at Wayne and got into his face and he was like, you know, calm down, calm down. And he said he took, took a step back to tie his shoes and then when he did that he

4

looked up at Wayne and called Wayne the "N" word and Wayne yelled back that he's not the "N" word.

And at that, basically, [Plaintiff] went nuts and basically went to attack Wayne and Andre got in between them and pulled [Plaintiff] away from Wayne. And at that point in time is when, basically, Wayne is coming in to me to tell me what had happened. Wayne proceeded to tell me that, you know, Andre and Rob were right there and saw the whole thing.

So I told Wayne to go home and I would, you know, interview them later and tell you, you know, what the outcome of this will be.

. . .

Q. Okay. So after you told Wayne to go home, that you would interview the other people later; what happened?

A. I got ahold of Jody – it's – so apparently after that happened, Rob and Andre took the truck and went back to the job to finish the job. And when they were back on the job, I had spoke to Jody and said, Hey, when those guys come back in, I need to talk to both of them about what just happened.

So a couple hours later they both came into the office and I interviewed each of them.

Q. Did you interview them together or separately?

A. Separately.

Q. And what, who did you interview first?

A. Andre.

Q. And what did he say happened?

A. He basically repeated exactly what Wayne had told me and said that he didn't want to sit by here and watch somebody lose his job for something he didn't do. And since I had him, you know, I asked him, I said, So, so can someone, like, elaborate to me what's all this "N" word going on? What happening out there? I said, Is something going on, guys? I'm tired of it.

And he told me that the only person that says the "N" word is [Plaintiff].

. . .

5

Q. Okay. And then did you speak to Rob after that?

A. Yes, sir.

. . .

Q. And what did Mr. Rose tell you?

A. Basically the same thing.

Q. Okay. So what'd you do after you spoke to those individuals?

A. All right. I made the determination that the offending party was [Plaintiff].

DE 35-2 at 82-87.

The Eleventh Circuit has held that this Court does not sit "as a super-personnel department that re-examines an entity's business decisions." *Alphin v. Sears-Roebuck & Co.*, 940 F.2d 1497, 1501 (11th Cir. 1991). Given the accounts that Mr. Damron received about the altercation from the Plaintiff's fellow employees, the Court declines to conclude that Mr. Damron's decision to immediately terminate the Plaintiff means that there is a triable issue about whether Mr. Damron's termination was pretextual. Were the Court to conclude otherwise, it would be acting as a "super-personnel department," ruling that a jury must decide the adequacy of Mr. Damron's human resources investigation into the fight.

Even if the Plaintiff is right, and his fellow employees did not tell Mr. Damron the truth, an employer may fire an employee "for a good reason, a bad reason, *a reason based on erroneous facts*, or no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added). The Plaintiff has not taken the Defendant's basis for termination—the consensus of witnesses that the Plaintiff was at fault— "head on and rebut[ted] it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

The Court addresses one other issue about the information Mr. Damron received from the Plaintiff's fellow employees.  The Plaintiff contends that his fellow employees lied to Mr. Damron, but he fails to persuade the Court that Mr. Damron's account of the employees' testimony is in dispute, particularly since the Plaintiff could have (and did) depose the employees.  DE 41-3. Stated differently, to create a dispute of fact the Plaintiff could have cited testimony from a fellow employee that contradicted Mr. Damron's account of the employee's prior testimony, but the Plaintiff has not done so.  Instead, the Plaintiff cites to the employees' depositions for the mere proposition that there is one inconsistency in Mr. Damron's records (indicating that he would/did get signed, written statements).  The Court declines to conclude, based upon that one potential inconsistency, that there is a dispute of fact about whether the employees told Mr. Damron that the Plaintiff was at fault for the altercation.  Instead, the record is clear—Mr. Damron was told (even if it was falsely) that the Plaintiff was at fault for the altercation.

<u>Conclusion and Ruling</u>

The Court grants the Defendant's Motion for three reasons.  First, the Plaintiff lacks a comparator.  Second, the Plaintiff does not have sufficient evidence of pretext to create a triable issue for a jury. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Third, for the reasons set forth in the Defendant's Motion,[2] which the Court adopts and incorporates herein.

The Plaintiff's real dispute is with his fellow employees who (he says falsely) attributed blame on him, and with his employer for not doing (as he sees it) a better job at discerning the real truth.  But that is not a basis for the Defendant to be held liable for racial discrimination.

---

2 The analysis for the Plaintiff's retaliation claim is slightly different from the disparate treatment claim.  Nonetheless, the Plaintiff's retaliation claim fails for the reasons set forth in this Order and for the reasons in the Defendant's Motion.

Accordingly, it is **ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment is **GRANTED**, the Defendant shall submit a proposed judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov within four business days of the date of rendition of this Order, all other pending motions are **DENIED AS MOOT**, and the Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 3rd day of July, 2024.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE